

## UNITED STATES BANKRUPTCY COURT
### SOUTHERN DISTRICT OF TEXAS
### HOUSTON DIVISION

**ENTERED**
**04/28/2009**

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| **GALVESTON COMPANY, LLC,** | § | **CASE NO. 09-30169-H4-7** |
| | § | **(Involuntary)** |
| Alleged Debtor. | § | |

### ORDER APPROVING (I) SETTLEMENT UNDER BANKRUPTCY RULE 9019; AND (II) SALE OF PROPERTY FREE AND CLEAR OF ALL LIENS, CLAIMS, INTERESTS AND ENCUMBRANCES PURSUANT TO 11 U.S.C. § 363(F)

The Court has considered the Motion to Approve Settlement Under Bankruptcy Rule 9019 between Galco, IP Investments, LLC ("IP"), Enzo Investments, L.P. ("Enzo"), Kenneth Noble Bigham, Sr., Carmen Bigham, Paul Bigham and Gerald Albright and Motion to Approve Sale of Property Free and Clear of all Liens, Claims, Interests and Encumbrances Pursuant to 11 U.S.C. § 363(f) filed by Galveston Company, LLC ("Galco"). The proposed compromise meets the requirements for a compromise as outlined in *Protective Comm. for Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson*, 390 U.S. 414 (1968) and should be approved. In approving the motion, the Court makes the following findings of fact and conclusions of law:

1. The parties have negotiated the compromise at arms length and in good faith.

2. The compromise is fair and equitable.

3. The probabilities of success, the complexity, expense and likely duration of litigating the claims at issue, the difficulties of collecting a judgment, and all other factors relevant to a full and fair assessment of the wisdom of the compromise have been considered by the Court and support approval of the compromise.

4. The compromise will facilitate the efficient administration of the bankruptcy estate.

5. The Purchaser is a good faith purchaser of the estate's property and is entitled to the protections of section 363(m) of the Bankruptcy Code.

6. The motion, the sale and the transactions contemplated therewith are in the best interest of the estate.

7. Adequate notice of the motion and the hearing on the motion has been given to the debtor, all creditors and all other parties-in-interest.

8. The estate's interests in the property should be conveyed free and clear of all liens, claims and encumbrances pursuant to 11 U.S.C. § 363(f).

9.     The Court has made additional findings of fact and conclusions of law on the record in open Court pursuant to Bankruptcy Rule 7052.

Accordingly, it is therefore

**ORDERED THAT:**

1.     The Motion to Approve Settlement Under Bankruptcy Rule 9019 and Motion to Approve Sale of Property Free and Clear of all Liens, Claims, Interests and Encumbrances Pursuant to 11 U.S.C. § 363(f) is **GRANTED**.

2.     The "Mediated Settlement Term Sheet" that is attached as **Exhibit 2** (the "Settlement") executed by the parties at a mediation conducted by Judge Marvin Isgur on March 3, 2009 and submitted to the Court is approved in all respects.

3.     So long as Galco's bankruptcy case is pending, this Settlement is enforceable exclusively by the United States Bankruptcy Court for the Southern District of Texas.  If for any reason this bankruptcy case is dismissed on Galco's motion, then this Settlement is enforceable in any Court of competent jurisdiction in Harris County, Texas.  If this bankruptcy case is dismissed on the motion of IP or Enzo, then this Settlement is enforceable in any Court of competent jurisdiction in Fayette County, Texas.  If this bankruptcy case is otherwise dismissed, then this Settlement is enforceable in any court of competent jurisdiction.

4.     Upon the entry of this Order, all pending litigation between the parties in any state or federal court shall be dismissed, with prejudice, with each party bearing its own costs and fees, by joint motions filed by the parties not later than 5 days after delivery of the releases, with delivery as set forth below.

5.     The following items shall be deposited with the Escrow Agent on or before 15 days after the entry date of this Order:

        A.     A document in the form of **Exhibit 3** executed by and on behalf of Gerald Albright, each released affiliate that is receiving a release pursuant to paragraph B, IP Investments, LLC ("IP"), Enzo Investments, L.P. ("Enzo") and each of their owners in which they fully release Kenneth Noble Bigham, Sr., Carmen Bigham, Paul Bigham, their real and personal property and any of their personal guarantys, Galco, and each of their agents, affiliates, attorneys, owners, managers, members, limited partners, general partners, directors, employees and assigns from all liability arising from the beginning of time through the Closing Date (the "Galco Party Releases").

        B.     A document in the form of **Exhibit 4** executed by Galco, Kenneth Noble Bigham, Sr., Carmen Bigham, Paul Bigham and each of their owners and each released affiliate that is receiving a release pursuant to paragraph A,

in which Galco, Kenneth Noble Bigham, Sr., Carmen Bigham, Paul Bigham fully release IP, Enzo, Gerald Albright, and each of their agents, affiliates, attorneys, owners, managers, members, limited partners, general partners, directors, employees and assigns from all liability arising from the beginning of time through the Closing Date (the "IP Party Releases").

C. A release in the form of **Exhibit 5** executed by IP releasing all liens and deeds of trust on all real and personal property that serve as collateral for the Royal Note and any other indebtedness, save and except the real property, personal property, and improvements owned by Galco that serve as collateral for the Royal Note (the "Personal Collateral Release").

D. A promissory note in the form of **Exhibit 6** executed by Enzo, and guaranteed by Enzo's general partner, in the original principal amount of $250,000, payable in 12 equal quarterly installments, with the first installment due 90 days after the Closing Date, with a blank date for the date of the note. The promissory note shall bear interest at 18% on all then unpaid amounts following an uncured event of default and shall bear interest at 0% prior to an event of default. In the event of a payment default, there will be a 10-day notice and opportunity to cure, with only two such notices required over the life of the note.

E. A written authorization executed by Enzo and its parent entity in the form of **Exhibit 7** authorizing the Escrow Agent to complete the $250,000 promissory note with a date of the Closing Date.

F. A special warranty deed in the form of **Exhibit 8** executed by Galco conveying all of Galco's interest in and to the real property set forth in **Exhibit 1** and all improvements thereon, with the Grantee left in blank, which Special Warranty Deed shall provide that the property is transferred "AS IS AND WITHOUT WARRANTY OTHER THAN AS TO TITLE AS SET FORTH IN THE BANKRUPTCY COURT ORDER APPROVING THE SALE OF THE PROPERTY" (the "Galco Special Warranty Deed").

G. A written authorization executed by Galco in the form of **Exhibit 9** authorizing the Escrow Agent to complete the Galco Special Warranty Deed with the name of the Grantee.

H. A document in the form of **Exhibit 10**, executed by IP, withdrawing its signature to the involuntary petition.

6. Rodney Tow shall serve as Escrow Agent on such terms and conditions as required by him. Mr. Tow's fees shall be paid one-half by Galco and one-half by IP and Enzo. If Mr. Tow is unwilling or unable to serve, this Court will appoint a substitute escrow agent.

7.    Within 30 days after the entry date of this Order, Enzo shall deposit $200,000 with the Escrow Agent.

8.    IP has not and will not, prior to July 4, 2009, sell, assign or hypothecate the Royal Note or any related security agreements that IP acquired from Royal Bank and that are the subject of the dispute between the parties.

9.    Kenneth Noble Bigham, Sr. or his assigns shall have the option to acquire the Royal Note and all related security documents and guarantees at any time on or before 11:59 p.m. on July 1, 2009 at a cash price of $4,995,000. The $4,995,000 may be paid only in cash, by wire transfer, paid to IP and received by IP prior to 11:59 p.m. on July 1, 2009. Although Galco shall have no obligation to do so, it acknowledges that it would be courteous to give reasonable notice of its intent to exercise the option and it will attempt to act in a courteous manner, with no penalty for failing to do so.

10.   No party shall seek, in the Bankruptcy Court or in any other forum, any extension of the July 1, 2009 date or any other dates herein. Time is of the essence.

11.   The real property set forth on **Exhibit 1**, all improvements thereon and related personal property that comprise the Industrial Facility and that serve as collateral for the Royal Note (the "Subject Property") are sold to IP Investments, LLC or its assignee (the "Purchaser") free and clear of all liens, claims and encumbrances pursuant to 11 U.S.C. § 363(f). Notwithstanding the foregoing, the sale shall not be free and clear of any ad valorem tax claims and related tax liens. The purchase price is $6,451,784.64, which amount represents a credit bid of the Royal Note by the Purchaser in accordance with **Exhibit 2**. In addition, the Purchaser shall pay all usual and customary closing costs, with each party bearing its own attorney's fees. The Closing Date shall be July 2, 2009. In the event that (i) the Purchaser is not the holder of the Royal Note; or (ii) the Purchaser is the holder of the Royal Note and the purchase price exceeds the amount due under the Royal Note, then all liens, claims and encumbrances on the Subject Property other than ad valorem tax claims and related liens will attach to the sales proceeds received by the Debtor

12.   Each party to **Exhibit 2**, each of their agents, officers, directors and attorneys shall not interfere, in any manner, with the proposed sale contemplated herein or the other arrangements set forth herein or in **Exhibit 2**. If any party does interfere, this Court shall take the following action (the "Interference Provisions"):

    A.    If the Court determines that IP, Enzo or any of their agents, officers, directors, attorneys or any persons acting in concert with them have interfered, then the $250,000 promissory note and the $200,000 in cash shall immediately be transferred by the Escrow Agent to Jerry Galow, Trustee, and an additional judgment shall be entered against Enzo (and jointly and severally against any party engaging or causing the interference) in the amount of $450,000, which $450,000 shall be in addition to the $250,000 promissory note and the $200,000 in cash.

B.      If the Court determines that Galco, Kenneth Noble Bigham, Sr., Carmen Bigham, Paul Bigham or any of their agents, officers, directors, attorneys or any persons acting in concert with them have interfered, then the $250,000 promissory note and the $200,000 in cash shall immediately be transferred by the Escrow Agent to Michael Neville, Trustee and Enzo shall have no obligation to pay the $200,000 in cash or the $250,000 promissory note as otherwise provided herein.

C.      The Court shall not issue any order making findings with respect to any breaches of the Interference Provisions without notice and an evidentiary hearing.

13.    On the Closing Date (and subject to the Interference Provisions and the Early Release Provisions), the following shall occur:

A.      The Escrow Agent shall deliver the Galco Party Releases and the IP Party Releases to counsel for the released parties.

B.      The Escrow Agent shall deliver the $200,000 in cash to Jerry Galow, Trustee. Mr. Galow shall disburse the sum of $50,000 to David R. Jones in trust for Galco with the balance to be distributed by Mr. Galow to Kenneth Noble Bigham, Sr., Carmen Bigham and Paul Bigham as they may further agree.

C.      The Escrow Agent shall deliver the $250,000 promissory note to Jerry Galow, Trustee for Bigham Investment Company.

D.      The Escrow Agent shall deliver the executed Personal Collateral Release to Jerry Galow.

E.      The Escrow Agent shall deliver the Galco Special Warranty Deed as completed by the Escrow Agent to the purchaser at the sale authorized by the Bankruptcy Court.

F.      The Escrow Agent shall deliver the document withdrawing IP's signature on the involuntary petition to Jerry Galow.

G.      All parties shall execute any documents reasonably required by the Escrow Agent to consummate the closing.

H.      If the purchaser at the sale is the holder of the Royal Note and related security documents, the Royal Note shall be delivered to the Escrow Agent by the holder, marked paid in full, along with releases of all liens and deeds of trust securing the Royal Note.

I.      If the Purchaser is not the holder of the Royal Note and related security documents, the purchase price shall be paid to the Escrow Agent by the purchaser and shall be distributed by the Escrow Agent as follows:

(i)      First, to the holder of the Royal Note in the amount provided by Texas law under the terms of the Royal Note.

(ii)      Second, to Galco.

14.     Notwithstanding the foregoing provisions regarding the deliveries to occur on the Closing Date, the Escrow Agent shall deliver the following immediately upon (i) receipt by the Escrow Agent of a file-stamped document filed in the United States Bankruptcy Court in which Kenneth Noble Bigham, Sr. (or his assigns) release the option granted herein to acquire the Royal Note and all related security documents; or (ii) receipt of proof that Kenneth Noble Bigham, Sr. (or his assigns) have paid the $4,995,000 option price (the "Early Release Provisions"):

A.     The Escrow Agent shall deliver the $200,000 in cash to Jerry Galow, Trustee.  Mr. Galow shall disburse the sum of $50,000 to David R. Jones in trust for Galco with the balance to be distributed by Mr. Galow to Kenneth Noble Bigham, Sr., Carmen Bigham and Paul Bigham as they may further agree.

B.     The Escrow Agent shall deliver the $250,000 promissory note to Jerry Galow, Trustee for Bigham Investment Company.   The $250,000 promissory note shall be dated by the Escrow Agent as of the date of the file-stamped document.

C.     The Escrow Agent shall deliver the Galco Party Releases and the IP Party Releases to counsel for the released parties.

D.     The Escrow Agent shall deliver the executed Personal Collateral Release to Jerry Galow.

15.     Neither IP nor Enzo nor any entity working in concert with them shall purchase any claims against Galco after the Closing Date.

16.     Galco has informed IP that Galco may have certain claims against Royal Bank America ("RBA").  IP has informed Galco that it has issued a limited indemnity in favor of RBA.  The parties desire to minimize any conflict with respect to this issue.  Accordingly, although the parties acknowledge that Galco may take such actions against RBA as it deems appropriate, it will not commence a lawsuit against RBA without first meeting in good faith to minimize the exposure to IP under its indemnity.  If the parties cannot agree on a manner to minimize such indemnity exposure, then they will mediate before Judge Isgur in good faith. This provision does not bar the filing of a lawsuit after the conduct of any such mediation;

provided such lawsuit must be based on (i) RBA's misrepresentation or willful conduct; or (ii) matters not known to Galco or Mr. Bigham as of the date of execution of the Settlement.

17.     All parties to this compromise and settlement shall execute and deliver all documents reasonably necessary to effectuate the intent of this compromise and settlement.

18.     To the extent applicable, any stay under Bankruptcy Rule 6004(g) is waived.  The parties are directed to consummate the settlement in accordance with this Order.

SIGNED this _28th_ day of _April_, 2009

_____
THE HONORABLE JEFF BOHM,
UNITED STATES BANKRUPTCY JUDGE

**<u>Exhibit 1</u>**
Legal Description



**EXHIBIT 1**

TRACT ONE: Being a 23.887 acre tract or parcel of land situated in the David Harris League, Abstract No. 25, Harris County, Texas, being all that certain tract of land called 3.949 acres described in General Warranty Deed dated May 16, 1995, from A. C. DuBose to VELSICOL CHEMICAL CORPORATION recorded under Clerk's File No. R409296 of the Harris County Official Public Records of Real Property, out of and a part of that certain tract called 22.00 acres described in Deed dated January 27, 1967, from Ratliff Chemical Corporation of Texas, a Texas corporation, to Velsicol Chemical Corporation, an Illinois corporation, recorded under Clerk's File No. C443176 of the Harris County Official Public Records of Real Property, and out of and a part of that certain tract of land called 6.676 acres designated as Tract 1 and described in Deed dated April 3, 1967, from FRIENDSWOOD DEVELOPMENT COMPANY to VELSICOL CHEMICAL CORPORATION recorded under Clerk's File No. C479024 of the Harris County Official Public Records of Real Property, said 23.887 acre tract or parcel of land herein described being shown on a plat of even date and is more particularly described by metes and bounds as follows:

BEARINGS ARE REFERENCED TO THE US STATE PLANE COORDINATE SYSTEM, TEXAS SOUTH CENTRAL ZONE 4204, NORTH AMERICAN DATUM 1983. ALL COORDINATES ARE SURFACE COORDINATES AND ALL DISTANCES ARE SURFACE DISTANCES.

BEGINNING at a Copperweld rod stamped 2089 found at the Southwesterly most corner of the said Velsicol Chemical Corporation tract called 22.00 acres and the Southwesterly most corner of the herein described tract, said rod being situated in the Northerly most right-of-way line of Bay Area Boulevard (174 feet wide) at its intersection with the Easterly most right-of-way line of Bayport Boulevard (150 feet wide) and has a Texas State Plane Coordinate System, South Central Zone 4204 value of X=3,322,026.45 and Y=13,791,548.45;

THENCE North 27 deg. 33 min. 23 sec. West, along the Easterly most right-of-way line of Bayport Boulevard, the Westerly most line of the said Velsicol Chemical Corporation tract called 22.00 acres and the Westerly most line of the said Velsicol Chemical Corporation tract called 3.949 acres, a distance of 991.11 feet to a 5/8" iron rod set with cap for the Northwesterly most corner of the said Velsicol Chemical Corporation tract called 3.949 acres and the Northwesterly most corner of the herein described tract;

THENCE North 62 deg. 27 min. 27 sec. East, along the Southerly most line of a Southern Pacific Transportation Company right-of-way (50 feet wide) described in Deed dated April 12, 1973, from FRIENDSWOOD DEVELOPMENT COMPANY to SOUTHERN PACIFIC TRANSPORTATION COMPANY recorded under Clerk's File No. D867930 of the Harris County Official Public Records of Real Property, and along the Northerly most line of the said Velsicol Chemical Corporation tract called 3.949 acres, a distance of 1433.81 feet to a 5/8" iron rod set for the Northeasterly most corner of the said Velsicol Chemical Corporation tract called 3.979 acres and the Northeasterly most corner of the herein described tract said iron rod being situated in the Westerly most right-of-way line of Chemical Road (100 feet wide);

THENCE South 27 deg. 32 min. 22 sec. East, along the Westerly most right-of-way line of Chemical Road and the Easterly most line of the said Velsicol Chemical Corporation tract called 3.979 acres, passing at 120.00 feet the Southeasterly most corner of the said Velsicol Chemical Corporation tract called 3.979 acres,

Continued on next page

CONTINUATION OF EXHIBIT "A"
GF NO.: 08109603

CONTINUATION OF THE EXHIBIT:
Same being the Northeasterly most corner of the said Velsicol Chemical
Corporation tract called 6.676 acres, and continuing along the Westerly most
right-of-way line of Chemical Road and the Easterly most line of the said
Velsicol Chemical Corporation tract called 6.676 acres, a total distance of
255.07 feet to a point marking the Northeasterly most corner of that certain
tract of land called 8.7350 acres described in a Special Warranty Deed dated
October 16, 1991, from VELSICOL CHEMICAL CORPORATION to DIXIE CHEMICAL COMPANY,
INC. recorded under Clerk's File No. N392508 of the Harris County Official
Public Records of Real Property, said point being a corner of the herein
described tract from which a found 5/8" iron rod bears South 67 deg. West, a
distance of 0.18 feet;

THENCE South 62 deg. 25 min. 30 sec. West, over and across the said Velsicol
Chemical Corporation tract called 6.676 acres, over and across a portion of the
said Velsicol Chemical Corporation tract called 22.00 acres and with the
Northerly most line of the said Dixie Chemical Company, Inc. tract called
8.7350 acres, a distance of 518.83 feet to a steel fence corner post found in
concrete for the Northwesterly most corner of the said Dixie Chemical Company,
Inc. tract called 8.7350 acres and an interior corner of the herein described
tract;

THENCE South 27 deg. 50 min. 06 sec. East, continuing over and across a portion
of the said Velsicol Chemical Corporation tract called 22.00 acres and with the
Westerly most line of the said Dixie Chemical Company, Inc. tract called 8.7350
acres, a distance of 735.76 feet to a 5/8" iron rod found in the Northerly most
right-of-way line of Bay Area Boulevard for the Southwesterly most corner of
the said Dixie Chemical Company, Inc. tract called 8.7350 acres and the
Southerly most Southeast corner of the herein described tract;

THENCE South 62 deg. 27 min. 27 sec. West, along the Northerly most
right-of-way line of Bay Area Boulevard and the Southerly most line of the said
Velsicol Chemical Corporation tract called 22.00 acres, a distance of 918.47
feet to the POINT OF BEGINNING, containing 1,040,504.2 square feet or 23.887
acres of land.

TRACT TWO: Being a 20.701 acre tract or parcel of land situated in the David
Harris League, Abstract No. 29, Harris County, Texas, being all that certain
tract of land called 1.979 acres described in Deed dated July 7, 1967, from
FRIENDSWOOD DEVELOPMENT COMPANY to VELSICOL CHEMICAL CORPORATION recorded under
Clerk's File No. C565934 of the Harris County Official Public Records of Real
Property, and out of and a part of that certain tract of land called 43.732
acres designated as Tract 2 and described in Deed dated April 3, 1967, from
FRIENDSWOOD DEVELOPMENT COMPANY to VELSICOL CHEMICAL CORPORATION recorded under
Clerk's File No. C479024 of the Harris County Official Public Records of Real
Property, said 20.701 acre tract or parcel of land herein described being shown
on a plat of even date and is more particularly described by metes and bounds
as follows:

BEARINGS ARE REFERENCED TO THE US STATE PLANE COORDINATE SYSTEM, TEXAS SOUTH
CENTRAL ZONE 4204, NORTH AMERICAN DATUM 1983. ALL COORDINATES ARE SURFACE
COORDINATES AND ALL DISTANCES ARE SURFACE DISTANCES.

COMMENCING at a Copperweld rod stamped 2089 found in the Northerly most right-
Continued on next page

CONTINUATION OF EXHIBIT 'A'
GF NO.: 08109603

of-way line of Bay Area Boulevard (174 feet wide) at its intersection with the Easterly most right-of-way line of Bayport Boulevard (150 feet wide), said rod has a Texas State Plane Coordinate System, South Central Zone 4204 value of X=3,222,026.45 and Y=13,791,545.45.

THENCE North 27 deg. 33 min. 23 sec. West, along the Easterly most right-of-way line of Bayport Boulevard, a distance of 1,041.11 feet to a 5/8" iron rod set with cap for the Southwesterly most corner of the said Velsicol Chemical Corporation tract called 1.979 acres and the Southwesterly most corner of the herein described tract and POINT OF BEGINNING from which a found 5/8" iron rod bears North 77 deg. East, a distance of 0.48 feet, said set iron rod being situated in the Northerly most right-of-way line of a Southern Pacific Transportation Company right-of-way (50 feet wide) described in Deed dated April 12, 1973, from FRIENDSWOOD DEVELOPMENT COMPANY to SOUTHERN PACIFIC TRANSPORTATION COMPANY recorded under Clerk's File No. D867930 of the Harris County Official Public Records of Real Property;

THENCE North 27 deg. 33 min. 23 sec. West , continuing along the Easterly most right-of-way line of Bayport Boulevard, passing at 60.00 feet a 5/8" iron rod found at the Northwesterly most corner of the said Velsicol Chemical Corporation tract called 1.979 acres, said iron rod being also the Southwesterly most corner of the said Velsicol Chemical Corporation tract called 43.722 acres, and continuing along the Easterly most line of Bayport Boulevard and the Westerly most line of the said Velsicol Chemical Corporation tract called 43.722 acres, for a total distance of 781.51 feet to a 5/8" iron rod found for the Southwesterly most corner of that certain tract of land called 10.00 acres described in a Special Warranty Deed dated December 26, 1991, from VELSICOL CHEMICAL CORPORATION to DIANAL AMERICA, INC. recorded under File Clerk's No. N471595 of the Official Public Records of Real Property, said iron rod being also the Northwesterly most corner of the herein described tract;

THENCE North 62 deg. 27 min. 00 sec. East with the Southerly most line of the said Dianal America, Inc. tract called 10.00 acres and over and across a portion of the Velsicol Chemical Corporation tract called 43.722 acres, a distance of 716.71 feet to a 1/2" iron rod found for the Southeasterly most corner of the said Dianal America, Inc. tract called 10.00 acres and a corner of the herein described tract, said iron rod being situated at the Westerly most line of that certain tract of land called 15.0000 acres described in a Special Warranty Deed dated May 28, 1992, from VELSICOL CHEMICAL CORPORATION to HOYER USA, INC. recorded under Clerk's File No. N693498 of the Harris County Official Public Records of Real Property;

THENCE South 27 deg. 27 min. 38 sec. East, with the Westerly most line of the said Hoyer USA, Inc. tract called 15.0000 acres and continuing over and across a portion of the said Velsicol Chemical Corporation tract called 43.722 acres, a distance of 305.40 feet to a 1/2" iron rod found for the Southwesterly most corner of the said Hoyer USA, Inc. tract called 15.0000 acres and an interior corner of the herein described tract;

THENCE North 62 deg. 25 min. 45 sec. East, with the Southerly most line of the said Hoyer USA, Inc. tract called 15.0000 acres and continuing over and across a portion of the said Velsicol Chemical Corporation tract called 43.722 acres, a distance of 717.77 feet to a 5/8" iron rod found in the Westerly most right-of-way line of Chemical Road (100 feet wide) for the Southeasterly most

Continued on next page

corner of the said Hoyer USA, Inc. tract called 15.0000 acres, said iron rod being the Easterly most Northeast corner of the herein described tract;

THENCE South 27 deg. 32 min. 22 sec. East, along the Westerly most right-of-way line of Chemical Road and the Easterly most line of the said Velsicol Chemical Corporation tract called 43.722 acres, passing at 416.55 feet a Copperweld rod stamped 3184 marking the Southeasterly most corner of the said Velsicol Chemical Corporation tract called 43.722 acres, same being the Northeasterly most corner of the said Velsicol Chemical Corporation tract called 1.979 acres, and continuing along the Westerly most right-of-way line of Chemical Road and the Easterly most line of the said Velsicol Chemical Corporation tract called 1.979 acres, a total distance of 476.55 feet to a 5/8" iron rod found for the Southeasterly most corner of the said Velsicol Chemical Corporation tract called 1.979 acres and the Southeasterly most corner of the herein described tract, said iron rod being situated in the Northerly most line of the said Southern Pacific Transportation Company right-of-way (50 feet wide);

THENCE South 62 deg. 27 min. 27 sec. West, along the Southerly most line of the said Velsicol Chemical Corporation tract called 1.979 acres and along the Northerly most line of the said Southern Pacific Transportation Company right-of-way (50 feet wide), a distance of 1433.83 feet to the POINT OF BEGINNING, containing 901,721.5 square feet or 20.701 acres of land.

TRACT THREE: That certain non-exclusive easement and right of way to construct, maintain, repair, operate, replace, change, and remove one pipeline as set out in instrument recorded under Harris County Clerk's File Number S275446.

# **Exhibit 2**
Mediated Settlement Term Sheet

## MEDIATED SETTLEMENT TERM SHEET

This Mediated Settlement Term Sheet is executed on March 3, 2009 following an all day mediation before United States Bankruptcy Judge Marvin Isgur.  Each of the parties was represented by counsel at the mediation and acknowledges that upon signing this term sheet will be bound by its terms.  The parties agree as follows:

1.  The settlement is not revocable by any party.

2.  While the bankruptcy case of The Galveston Company, LLC ("Galco") is pending, this Term Sheet is enforceable exclusively by the United States Bankruptcy Court for the Southern District of Texas.  If for any reason the bankruptcy case is dismissed on Galco's motion, then this term sheet is enforceable in any Court of competent jurisdiction in Harris County, Texas.  If this bankruptcy case is dismissed on the motion of IP or Enzo, then this Term Sheet is enforceable in any Court of competent jurisdiction in Fayette County, Texas.  If this bankruptcy case is otherwise dismissed, then this Term Sheet is enforceable in any court of competent jurisdiction.

3.  The provisions of this Term Sheet shall be implemented through motions and applications filed in Galco's bankruptcy case.  No party hereto may oppose (directly or indirectly) the approval by the Bankruptcy Court of the provisions of the Term Sheet.  If for any reason the Bankruptcy Court does not approve this Term Sheet, then the provisions hereof are not thereafter binding on any party and each party shall be restored to the status quo as of 6:00 p.m. on March 3, 2009 and this Term Sheet is terminated.  No provision of the Term Sheet shall be severable or survive such termination.

    A.  Pending consideration of the motions and applications, all pending litigation (including any attempted foreclosures) between the parties in any state or federal court shall be abated by joint motions filed by the parties.  This provision does not preclude IP from seeking reconsideration of the Bankruptcy Court's order allowing one party to withdraw from the involuntary petition, which motion shall be abated after filing.

    B.  If the motions and applications to implement this Term Sheet are approved, then all pending litigation between the parties in any state or federal court shall be dismissed, with prejudice, with each party bearing its own costs and fees, by joint motions filed by the parties not later than 5 days after delivery of the releases, with delivery as set forth below.

    C.  The parties will request that the Bankruptcy Court abate consideration of the involuntary bankruptcy petition and matters pertaining to it pending the Closing Date.

4.  The following items shall be deposited with the escrow agent (who will be selected as set forth below) on or before 15 days after entry of orders approving the Term Sheet by the Bankruptcy Court of the terms set forth in this Term Sheet:



EXHIBIT
2

A. A document executed by and on behalf of Gerald Albright, each released affiliate that is receiving a release pursuant to paragraph 4B, IP Investments, LLC ("IP"), Enzo Investments, L.P. ("Enzo") and each of their owners in which IP and Enzo fully release, Kenneth Noble Bigham, Sr., Carmen Bigham, Paul Bigham, their real and property and any of their personal guaranties, Galco, and each of their agents, affiliates, attorneys, owners, managers, members, limited partners, general partners, directors, employees and assigns from all liability arising from the beginning of time through the Closing Date.

B. A document executed by Galco, Kenneth Noble Bigham, Sr., Carmen Bigham, Paul Bigham and each of their owners and each released affiliate that is receiving a release pursuant to paragraph 4A,  in which Galco, Kenneth Noble Bigham, Sr., Carmen Bigham, Paul Bigham fully release IP, Enzo, Gerald Albright, and each of their agents, affiliates, attorneys, owners, managers, members, limited partners, general partners, directors, employees and assigns from all liability arising from the beginning of time through the Closing Date.

C. A release, in recordable form, executed by IP of all liens and deeds of trust on all real and personal property that serve as collateral for the Loan Documents and Note, save and except the real property, personal property, and improvements owned by Galco.

D. A promissory note executed by Enzo, and guaranteed by Enzo's general partner, in the original principal amount of $250,000, payable in 12 equal quarterly installments, with the first installment due 90 days after the Closing Date, with a blank date for the date of the note.  The promissory note shall bear interest at 18% on all then unpaid amounts following an uncured event of default and shall bear interest at 0% prior to an event of default.  In the event of a payment default, there will be a 10 day notice and opportunity to cure, with only two such notices required over the life of the note.

E. A written authorization executed by Enzo and its parent entity authorizing the Escrow Agent to complete the $250,000 promissory note with a date of the Closing Date.

F. A Special Warranty Deed, executed by Galco, to all of Galco's real property and improvements that serve as collateral for the Loan Documents and Note, with the Grantee left in blank, which Special Warranty Deed shall provide that the property is transferred AS IS AND WITHOUT WARRANTY OTHER THAN AS TO TITLE AS SET FORTH IN THE BANKRUPTCY COURT ORDER APPROVING THE SALE OF THE PROPERTY.

G. A written authorization executed by Galco authorizing the Escrow Agent to complete the Special Warranty Deed with the name of the Grantee.

H.  A document, executed by IP, withdrawing its signature to the involuntary petition.

I.  Rodney Tow, or such other person as appointed by the Bankruptcy Court, shall serve as escrow agent on such terms and conditions as required by him. Tow's fees shall be paid one-half by each party.

5.  On or before 30 days after entry of orders approving the Term Sheet by the Bankruptcy Court of the terms set forth in this Term Sheet, Enzo and/or IP shall deposit $200,000 with the Escrow Agent.

6.  IP has not and will not, prior to July 4, 2009, sell, assign or hypothecate the promissory note or any related security agreements that IP acquired from RBS Bank and that are the subject of the dispute between the parties (the "Loan Documents and Note").

7.  IP hereby agrees that Kenneth Noble Bigham, Sr. or his assigns ("Bigham"), have the option to acquire the Loan Documents and Note at any time on or before 11:59 p.m. on July 1, 2009, at a cash price of $4,995,000. The $4,995,000 may be paid only in cash, by wire transfer, paid to IP and received by IP prior to 11:59 p.m. on July 1, 2009. Not later than March 17, 2009, IP shall provide written notice to Bigham of wire instructions for the payment. Although Galco shall have no obligation to do so, it acknowledges that it would be courteous to give reasonable notice of its intent to exercise the option and it will attempt to act in a courteous manner, with no penalty for failing to do so.

8.  No party shall seek, in the Bankruptcy Court or in any other forum, any extension of the July 1, 2009 date or any other dates herein. Time is of the essence.

9.  The parties shall request that Galcos' real and personal property and improvements that serve as part of the collateral for the Loan Documents and Note shall be sold pursuant to an order of the United States Bankruptcy Court, with the sale to be free and clear of all liens, claims and encumbrances. Notwithstanding the foregoing, the sale shall not be free and clear of any ad valorem tax claims and related liens. The Purchaser shall pay all usual and customary closing costs, with each party bearing its own attorneys fees. The motion shall request that the Bankruptcy Court set a bidding date on approximately 30 days notice, estimated to be approximately May 3, 2009. The then holder of the Loan Documents and Note agrees that it will bid not less than the full amount owed on the Note as of the bidding date. The successful bidder at the sale shall be required to close on the Closing Date. The Closing Date shall be July 2, 2009.

10. Each party to this Term Sheet, each of their agents, officers, directors and attorneys agree that they will not interfere, in any manner, with the proposed sale, the proposed bidding procedures or the other arrangements set forth in this Term Sheet. If any party does interfere, the United States Bankruptcy Court is requested to enforce this Term Sheet notwithstanding any such interference. In furtherance of this agreement, the following shall occur:

A.  If the Bankruptcy Court determines that IP, Enzo or any of their agents, officers, directors, attorneys or any persons acting in concert with them have interfered,

3

then the $250,000 promissory note and the $200,000 in cash shall immediately be transferred by the Escrow Agent to Jerry Galow, Trustee, and an additional judgment shall be entered against Enzo (and jointly and severally against any party engaging or causing the interference) in the amount of $450,000, which $450,000 shall be in addition to the $250,000 promissory note and the $200,000 in cash.

B.  If the Bankruptcy Court determines that Galco, Kenneth Noble Bigham, Sr., Carmen Bigham, Paul Bigham or any of their agents, officers, directors, attorneys or any persons acting in concert with them have interfered, then the $250,000 promissory note and the $200,000 in cash shall immediately be transferred by the Escrow Agent to Michael Neville, Trustee and Enzo shall have no obligation to pay the $200,000 in cash or the $250,000 promissory note as otherwise provided herein.

C.  The parties shall cooperate in the filing of all motions and applications and shall provide advance drafts for comments prior to filing of a motion.  A motion or objection filed in good faith to interpret rather than to contravene this Term Sheet shall not be considered an interference.

D.  The parties may have discussions with respect to the conduct by IP of due diligence in its capacity as the holder of the Note and Loan Documents.  If the parties are unable to agree on the proper conduct of such due diligence, then the matter shall be further mediated before Judge Isgur.  If the matter is still not resolved, then IP may seek an order of the Bankruptcy Court and Galco may oppose such relief.

E.  The Bankruptcy Court shall not issue an order making findings with respect to any breaches of this paragraph 10 without notice and an evidentiary hearing.

11. On the Closing Date (and subject to the provisions of paragraph 10 and 12 hereof), the following shall occur:

A.  The Escrow Agent shall deliver the releases to counsel for the released parties.

B.  The Escrow Agent shall deliver the $200,000 in cash to Jerry Galow, Trustee.

C.  The Escrow Agent shall deliver the $250,000 promissory note to Jerry Galow, Trustee.

D.  The Escrow Agent shall deliver the release executed pursuant to paragraph 4C to Jerry Galow.

E.  The Escrow Agent shall deliver the Special Warranty Deed to the purchaser at the sale authorized by the Bankruptcy Court.

F.  The Escrow Agent shall deliver the document withdrawing IP's signature on the involuntary petition to Jerry Galow.

G.  All parties shall execute any documents reasonably required by the Escrow Agent to consummate the closing.

H.  If the purchaser at the sale is the holder of the Note and Loan Documents, the Note shall be delivered to the Escrow Agent by the holder, marked paid in full, along with releases of all liens and deeds of trust held by the holder.

I.  If the purchaser at the sale is not the holder of the Note and Loan Documents, the purchase price shall be paid to the Escrow Agent by the purchaser and shall be distributed by the Escrow Agent as follows:

(i)  First, to the holder of the Note in the amount provided by Texas law under the terms of the note.

(ii)  Second, to Galco.

12. Notwithstanding the provisions of paragraph 11 hereof, the Escrow Agent shall release the following upon (i) receipt by the Escrow Agent of a file-stamped document filed in the United States Bankruptcy Court in which Bigham releases the option set forth in paragraph 7 hereof; or (ii) receipt of proof that Bigham or his assigns have paid the $4,995,000 in accordance with paragraph 7 hereof.

A.  The $200,000 in cash.

B.  The $250,000 promissory note, which shall be dated as of the date of the file-stamped document.

C.  The releases.

D.  The releases of liens and deeds of trust against all of the collateral not owned by Galco.

E.  Each of the foregoing shall be delivered to the person set forth in paragraph 11.

13. Neither IP nor Enzo nor any entity working in concert with them shall purchase any claims against Galco after the Closing Date.

14. Galco has informed IP that Galco may have certain claims against Royal Bank America ("RBA"). IP has informed Galco that it has issued a limited indemnity in favor of RBA. The parties desire to minimize any conflict with respect to this issue. Accordingly, although the parties acknowledge that Galco may take such actions against RBA as it deems appropriate, it will not commence a lawsuit against RBA without first meeting in good faith to minimize the exposure to IP under its indemnity. If the parties cannot agree on a manner to

5

minimize such indemnity exposure, then they will mediate before Judge Isgur in good faith. This provision does not bar the filing of a lawsuit after the conduct of any such mediation; provided such lawsuit must be based on (i) RBA's misrepresentation or willful conduct; or (ii) matters not known to Galco or Bigham as of the date of execution of this document.

15. This Term Sheet is binding.

16. This Term Sheet represents the entire agreement of the parties. There are no separate oral or written agreements.

17. There has been no consideration except as set forth herein.

18. The consideration set forth herein is deemed by the parties to be full consideration for the mutual obligations set forth herein. The allocation of the consideration payable hereunder shall be set forth in the motions to be filed with the Bankruptcy Court. If the parties cannot agree on the allocation, then the allocation shall be determined by the Bankruptcy Court.

19. This Term Sheet shall be interpreted under Texas law.

The Galveston Company, LLC, by Kenneth Noble Bigham, Sr., its Managing Member

IP Investments, LLC, by _____ its Managing Member

Enzo Investments, L.P., by _____, its General Partner

Kenneth Noble Bigham, Sr.

Carmen Bigham, by her attorney, Jerry Galow

Paul Bigham, by his attorney, Jerry Galow

Gerald Albright

## Exhibit 3
Galco Party Form of Release

## RELEASE

Pursuant to the Order of the United States Bankruptcy Court for the Southern District of Texas entered on or about April 24, 2009 in *In re: Galveston Company, LLC*, Case No. 09-30169-H4-7, a copy of which is attached hereto as **Exhibit "A"**, in consideration of the foregoing and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, IP Investments, LLC, Enzo Investments, LP, Northgate Custom Homes, Landquest Development Group and Gerald Albright on their own behalf and on behalf of each of their agents, affiliates, attorneys, owners, managers, members, limited partners, general partners, directors, employees and assigns, hereby fully and finally release, acquit and forever discharge Kenneth Noble Bigham, Sr., Carmen Bigham, Paul Bigham, their personal and real property and Galveston Company, LLC, together with each of their respective affiliates, attorneys, owners, managers, members, limited partners, general partners, directors, employees and assigns, from any and all past, present and future claims, defaults, demands, suits, obligations, actions, causes of action, rights or damages, under any legal theory, including without limitation, under contract, tort, statute, or otherwise, which they now have, may claim to have, ever had or may hereafter acquire, whether such claims are currently known, unknown, foreseen or unforeseen, from the beginning of time through and including the Closing Date as that term is defined in **Exhibit "A"**.

Executed this ___ day of _____, 2009.

**IP Investments, LLC**

By: _____
Title: _____

**Enzo Investments, LP**

By: _____
Title: _____

**Northgate Custom Homes**

By: _____
Title: _____

**Gerald Albright**

_____

**Exhibit A**
**Bankruptcy Court Order**

## **Exhibit 4**
### IP Party Form of Release

## **RELEASE**

Pursuant to the Order of the United States Bankruptcy Court for the Southern District of Texas entered on or about April 24, 2009 in *In re: Galveston Company, LLC*, Case No. 09-30169-H4-7, a copy of which is attached hereto as **Exhibit "A"**, in consideration of the foregoing and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, The Galveston Company, LLC, Kenneth Noble Bigham, Sr., Carmen Bigham and Paul Bigham, on their own behalf and on behalf of each of their agents, affiliates, attorneys, owners, managers, members, limited partners, general partners, directors, employees and assigns, hereby fully and finally release, acquit and forever discharge IP Investments, LLC, Enzo Investments, LP, Northgate Custom Homes and Gerald Albright, together with each of its respective affiliates, attorneys, owners, managers, members, limited partners, general partners, directors, employees and assigns, from any and all past, present and future claims, defaults, demands, suits, obligations, actions, causes of action, rights or damages, under any legal theory, including without limitation, under contract, tort, statute, or otherwise, which they now have, may claim to have, ever had or may hereafter acquire, whether such claims are currently known, unknown, foreseen or unforeseen, from the beginning of time through and including the Closing Date as that term is defined in **Exhibit "A"**.

Executed this ___ day of _____, 2009.

**The Galveston Company, LLC**

By: _____

Title:_____

**Kenneth Noble Bigham, Sr.**

_____

**Carmen Bigham**

_____

**Paul Bigham**

_____

**Exhibit A**
**Bankruptcy Court Order**

# **Exhibit 5**
Mortgage Releases

## RELEASE OF LIENS

STATE OF TEXAS          §
                        §   KNOW ALL MEN BY THESE PRESENTS:
COUNTY OF FAYETTE   §

WHEREAS, IP INVESTMENTS, LLC ("***Lender***"), is the present legal and equitable owner and holder of that one certain promissory note (the "***Note***"), executed by THE GALVESTON COMPANY, LLC ("***Borrower***") on October 29, 2004, and secured by (i) that certain Inferior Lien Deed of Trust of even date therewith, executed by PAUL BIGHAM ("***Mortgagor***"), in favor of a Trustee named therein, for the benefit of Royal Bank America, as lender ("***RBA***"), recorded in Volume 1290, Page 214, as ratified and amended by that certain Ratification of Deed of Trust, Security Agreement, Assignment of Leases and Rents, Financing Statement and Modification of Indebtedness Secured Thereby recorded in Volume 1309, Page 121, and as assigned by that certain Assignment of Deed of Trust dated September 30, 2008, executed by RBA in favor of Lender and recorded in Volume 1456, Page 528, and (ii) that certain financing statement recorded in Volume 1290, Page 274, all of the Official Public Records of Real Property of Fayette County, Texas (collectively, the "***Lien Documents***").

WHEREAS, the property covered by the Lien Documents is the property described on ***Exhibit A*** attached hereto and by this reference incorporated herein for all purposes (hereinafter referred to as the "***Released Property***").

NOW, THEREFORE, for and in consideration of TEN AND NO/100 DOLLARS ($10.00) and other good and valuable consideration paid by Borrower to Lender, the receipt and sufficiency of which is hereby acknowledged and confessed, Lender, the current holder of the Note and the Lien Documents, hereby releases and discharges the Released Property from any and all liens and security interests given to secure the payment of the Note including, but not limited to, the Lien Documents above described.

[signature page follows]

1562864v2

EXECUTED on this _____ day of April, 2009.

IP INVESTMENTS, LLC

By: _____
Name: _____
Title: _____

STATE OF _____        §
                                                                §
COUNTY OF _____        §

     This instrument was acknowledged before me on April _____, 2009, by _____ _____, _____ of   IP   Investments,   LLC,   a _____ limited liability company, for and on behalf of said bank.

[S E A L]

_____
Notary Public in and for the State of _____

After recording return to:
David R. Jones, Esq.
Porter & Hedges, L.L.P.
1000 Main Street, 36th Floor
Houston, Texas 77002

# EXHIBIT A

## LEGAL DESCRIPTION

[See attached]

## EXHIBIT A

### 122.046 ACRES

122.046 acres of land out of the William Gorham Survey, Abstract 40, situated in Fayette County, Texas, and being all of a tract of land called to contain 68.885 acres described in a conveyance from Lillie Kahanak to Kenneth N. Bigham, et ux, by deed dated July 22, 1992, and recorded in Volume 852, Page 52, all of a tract of land called to contain 0.53 acres known as THIRD TRACT and part of a tract of land called to contain 164.54 acres known as FIRST TRACT described in a conveyance from James W. Clift, et ux, to Kenneth N. Bigham, et ux, by deed dated March 01, 1990, and Recorded in Volume 801, Page 749, of the Fayette County Deed Records; said 122.046 acre tract being more particularly described by metes and bounds as follows:

BEGINNING at a 1/2 inch iron rod found marking the Southwest corner of the aforesaid 68.885 acre tract and the herein described tract in the North Margin of West County Line Road, at the Southeast corner of a tract of land called to contain 67.885 acres described in a conveyance from Leon James Krupala, et ux, to Perry L. Krupala and Pamela M. Kuepers by deed dated June 19, 1995, and Recorded in Volume 926, Page 319, of the Fayette County Official Records;

THENCE with the Southerly West Boundary Line of the 68.885 acre tract Recorded in Volume 852, Page 52, and the herein described tract and the Southerly East Boundary Line of the aforesaid 67.885 acre tract Recorded in Volume 926, Page 319, N00°30'50"E (Reference Bearing) a distance of 2819.91 feet to a 1/2 inch iron rod found for angle corner;

THENCE with the middle West Boundary Line of the 68.885 acre tract and the Northerly East Boundary Line of the 67.885 acre Krupala tract N23°44'44"E a distance of 1066.98 feet to a 1/2 inch iron rod found for another angle corner of the herein described tract at the most Northerly corner of the aforesaid 67.885 acre tract at the Southeast corner of a tract of land called to contain 19.86 acres known as SECOND TRACT described in a conveyance from Alfonse Kristinik to Alphonse Joseph Kristinik, by deed dated July 13, 1905, and Recorded in Volume 920, Page 137, of the Fayette County Deed Records and also being the Westerly South corner of a tract of land called to contain 80.51 acres described in a conveyance from Edward L. Freudenberg, et ux, to Kenneth Bigham, et ux, by deed dated December 31, 1986, and Recorded in Volume 737, Page 270, and also being the most Westerly South corner of a 296.794 acre tract this day surveyed for Kenneth N. Bigham;

THENCE with the Northerly West Boundary Line of the 68.885 acre tract and the Westerly East Boundary Line of the 80.51 acre tract and the 296.794 acre tract this day surveyed N37°35'44"E a distance of 786.60 feet to a 1/2 inch iron rod found by a Large Post Oak Tree for the Northwest corner of the 68.885 acre tract and an interior corner of the 80.51 acre tract and the 296.794 acre tract;

THENCE with the Northerly North Boundary Line of the 68.885 acre tract and a Southerly South Boundary Line of the 80.51 acre tract and the 296.794 acre tract N89°53'08"E a distance of 400.30 feet to a 3/8 inch iron rod found marking the Northeast corner of the 68.885 acre tract and the Southerly Southeast corner of the 80.51 acre tract and a interior corner of the 296.794 acre tract, in the West Boundary Line of the aforesaid 164.54 acre tract Recorded in Volume 801, Page 749;

THENCE with the East Boundary Line of the 68.88 acre tract and the Easterly West Boundary Line of the 164.54 acre tract S00°19'51"E a distance of 727.16 feet to a 3/8 inch iron rod for angle point and S00°31'42"E a distance of 957.21 feet to a 1/2 inch iron rod found by a Burr Oak for angle point marking an interior corner of the aforesaid 164.54 acre tract at the Southeast corner of the aforesaid 0.53 acre tract;

THENCE across the 164.54 acre tract with an existing fence S00°59'39"W a distance of 1064.11 feet to a 1/2 inch iron rod set by a corner post for angle point inside of the 164.54 acre tract;

THENCE with an existing fence S28°26'05"W a distance of 955.93 feet to a 1/2 inch iron pipe set by a corner post for the Southeast corner of the herein described tract in the South Boundary Line of the 164.54 acre tract in the North Margin of West County Line Road;

THENCE with the North Margin of West County Line Road and the South Boundary Line of the 164.54 acre tract S80°15'33"W a distance of 441.47 feet to a 3/8 inch iron rod found for angle point marking the Southwest corner of the 164.54 acre tract and the Southeast corner of the 68.885 acre tract and continue with the North Margin of West County Line Road and the South Boundary Line of 68.885 acre tract S87°49'14"W a distance of 499.78 feet to the POINT OF BEGINNING containing 122.046 acres of land.

1562864v2

# **Exhibit 6**
Promissory Note and Guaranty

# PROMISSORY NOTE

**$250,000.00**                    **Houston, Texas**                    April _____, 2009

Pursuant to the Order of the United States Bankruptcy Court for the Southern District of Texas entered on or about April 24, 2009 (the "Order") in *In re: Galveston Company, LLC*, Case No. 09-30169-H4-7 and for value received, Enzo Investments, LP, 4141 Southwest Freeway #300, Houston, Texas 77027 (the "***Borrower***"), promises and agrees to pay to the order of Bigham Investment Company, c/o Galow & Smith, P.C. 1204 Nueces Street, Austin, Texas 78701 (together with any subsequent holder of this note, the "***Lender***"), the sum of $250,000.00 (TWO HUNDRED AND FIFTY THOUSAND AND 00/100 DOLLARS) in legal and lawful money of the United States of America.

    1.    <u>Payments</u>. Commencing on the date that is ninety (90) days after the date of this Promissory Note above and continuing thereafter on the following dates (the "Payment Dates"):

> 180 days after the date of this Promissory Note
> 270 days after the date of this Promissory Note
> 360 days after the date of this Promissory Note
> 450 days after the date of this Promissory Note
> 540 days after the date of this Promissory Note
> 630 days after the date of this Promissory Note
> 720 days after the date of this Promissory Note
> 810 days after the date of this Promissory Note
> 900 days after the date of this Promissory Note
> 990 days after the date of this Promissory Note

until 1,080 days after the date of this Promissory Note (the "***Maturity Date***"), Borrower shall pay an amount equal to $20,833.33 to Lender. The entire unpaid balance hereof, together with any accrued interest thereon, shall be due and payable to Lender on the Maturity Date. If any payment is due on a day which is not a Business Day, Borrower shall be entitled to delay such payment until the next Business Day. Each payment or prepayment hereon must be paid at the address of Lender set forth above in lawful and freely transferable money of the United States of America and in funds which are or will be available for immediate use by Lender, without setoff or counterclaim. "***Business Day***" means every day on which banks in Texas are open for banking business.

    2.    <u>Default Interest</u>. All matured past due principal and/or interest shall bear interest from the Payment Date until paid at a fixed rate of eighteen percent (18%) per annum.

    3.    <u>Collateral.</u> This Term Note is unsecured.

    4.    <u>Guaranty.</u> This Term Note is guaranteed pursuant to that certain Guaranty between Lender and RR Homes, LLC, the general partner of the Borrower, of even date herewith (the "***Guaranty***").

    5.    <u>Prepayments</u>. This note may be prepaid, in whole or in part, at any time, without notice or penalty. Any such prepayment shall be applied first toward any accrued interest, and

the balance, if any, toward installments of principal in the inverse order of maturity, but interest shall immediately cease upon amounts of principal prepaid hereon.

6.   <u>Default</u>.  The term *"Default"* means:  (a) the failure or refusal of Borrower to make any payment hereunder when due or to comply with any provision herein; or (b) Borrower or any guarantor becomes insolvent, fails to pay its debts generally as they become due or becomes the subject of any proceeding under any debtor relief law; *provided that*, upon the occurrence of Default pursuant to subsection (a) above, Lender shall give Borrower written notice pursuant to the terms of this Note of the occurrence of such Default and Borrower shall have ten (10) days from the date of such notice to cure such Default; *provided further that*, Borrower shall only be entitled to two (2) of the aforementioned notice and cure periods from the date of the Note through the Maturity Date.  Subject to any right to a notice and cure period, in the event of a Default, Lender may (i) declare the entire unpaid balance of this note, or any part hereof, immediately due and payable, whereupon it shall be due and payable (*provided that*, upon the occurrence of a Default under *clause (b)* above involving the Borrower or any guarantor becoming the subject of any bankruptcy, receivership or other similar debtor relief type proceeding, this note shall automatically become due and payable without notice or other action of any kind); (ii) offset against this note any sum or sums owed by Lender to Borrower; and/or (iii) proceed to protect and enforce any other legal or equitable right or remedy of Lender. No delay on the part of Lender in the exercise of any power or right or single or partial exercise of any such power or right, under this note or any other instrument executed in connection herewith, shall operate as a waiver thereof. Enforcement of any security for this note shall not constitute an election of remedies so as to preclude the exercise of any other remedy.

7.   <u>Waiver</u>.  Borrower and each other party ever liable for the payment of any sum hereunder jointly and severally waive demand, presentment, protest, notice of nonpayment, notice of intention to accelerate, notice of protest and any and all lack of diligence or delay in collection or the filing of suit hereon which may occur, and agree that their liability regarding this note shall not be affected by any renewal, extension, indulgence or any release or change in security, and hereby consent to any and all renewals, extensions, indulgences, releases or changes, regardless of the number thereof.

8.   <u>Attorneys' Fees and Costs</u>.  If this note is placed in the hands of an attorney for collection, or if this note is collected in whole or in part through legal proceedings of any nature, Borrower promises to pay all costs of collection, including but not limited to reasonable attorneys' fees incurred by Lender, whether or not suit is filed.

9.   <u>Notices</u>.  Any notice or demand given hereunder by Lender shall be deemed to have been given and received (a) when actually received by Borrower, if delivered in person, or (b) if mailed to the address below (whether ever received or not), two Business Days after deposit in the U.S. Mail, postage prepaid.

10.   <u>Governing Law</u>.  This note is intended to be performed in Texas and the laws of Texas shall govern its validity, enforcement and interpretation.  Borrower hereby irrevocably submits to the nonexclusive jurisdiction of the state and federal courts of the State of Texas and irrevocably waives any objection to venue or claim of an inconvenient forum with respect to the district courts of Harris County, Texas, or the U.S. District Court for the Southern District of Texas (Houston Division) in any dispute related to this note, and irrevocably consents to the

service of process out of any of such courts by postage prepaid certified mail to its address below.

11.    Headings.  The headings herein are for convenience only and shall not be deemed a part hereof.

12.    Successors and Assigns.  All of Borrower's agreements in this note shall bind its successors and assigns (*provided, however, that* Borrower may not assign any rights, powers or obligations under this note).

13.    Maximum Interest Rate.  Regardless of any provision contained herein or in any document related hereto, Lender shall never be entitled to receive, collect or apply as interest any amount in excess of the Highest Lawful Rate.  In the event Lender ever receives, collects or applies as interest any such excess, it shall be deemed a partial prepayment of principal and treated hereunder as such and, if the principal hereof is paid in full, any remaining excess shall be refunded to Borrower.  In determining whether or not the interest paid or payable, under any specific contingency, exceeds the Highest Lawful Rate, Borrower and Lender shall (a) characterize any nonprincipal payment as an expense, fee or premium rather than as interest, (b) exclude voluntary prepayments and the effects thereof, and (c) spread the total amount of interest throughout the entire contemplated term hereof (*provided that* if the indebtedness evidenced hereby is paid and performed in full prior to the end of the full contemplated term thereof, and if the interest received for the actual period of existence exceeds the Highest Lawful Rate, Lender shall apply or refund  such excess as provided above, and shall not be subject to any penalties provided by any laws for contracting for, charging or receiving interest in excess of the Highest Lawful Rate).  *"Highest Lawful Rate"* means the maximum rate of interest which Lender is allowed to contract for, charge, take, reserve or receive under applicable law after taking into account, to the extent required by applicable law, any and all relevant payments or charges hereunder.

14.    Entirety and Amendments.  THIS NOTE, THE GUARANTY AND THE MEDIATED SETTLEMENT TERM SHEET DATED MARCH 3, 2009 REPRESENT THE FINAL AGREEMENT BETWEEN THE PARTIES AND MAY NOT BE CONTRADICTED BY EVIDENCE OF PRIOR, CONTEMPORANEOUS OR SUBSEQUENT ORAL AGREEMENTS BY THE PARTIES.  THERE ARE NO UNWRITTEN ORAL AGREEMENTS BETWEEN THE PARTIES.  THIS NOTE EMBODIES THE ENTIRE WRITTEN AGREEMENT BETWEEN THE PARTIES, SUPERSEDES ALL PRIOR WRITTEN AGREEMENTS AND UNDERSTANDINGS, IF ANY, RELATING TO THE SUBJECT MATTER HEREOF, AND MAY BE AMENDED ONLY BY AN INSTRUMENT IN WRITING EXECUTED JOINTLY BY BORROWER AND LENDER.

Executed as of this ___ day of _____, 2009.

ENZO INVESTMENTS, L.P.

By: _____
Name: _____
Title: _____

## GUARANTY

THIS GUARANTY (as amended, supplemented, or restated, this "*Guaranty*") is executed as of _____, 2009, by the undersigned ("*Guarantor*") for the benefit of Bigham Investment Company ("*Lender*").

## RECITALS

Enzo Investments, L.P. ("*Borrower*"), as borrower, and Lender, as lender, have entered into that certain Promissory Note in the original principal amount of $250,000.00 dated of even date herewith (as amended, supplemented or restated, the "*Note*").

Guarantor directly owns an equity interest in Borrower and has agreed to enter into this Guaranty so that Borrower can receive the benefits of the Guaranteed Obligation (as defined below).

In Guarantor's judgment, the value of the consideration received and to be received by it under the Note is reasonably worth at least as much as its liability and obligation under this Guaranty, and such liability and obligation may reasonably be expected to benefit Guarantor directly or indirectly.

It is expressly understood among Borrower, Guarantor, and Lender that the execution and delivery of this Guaranty is a condition precedent to Lender's obligations to extend credit under the Note.

NOW, THEREFORE, for valuable consideration, the receipt and adequacy of which are hereby acknowledged, Guarantor guarantees to Lender the prompt payment at maturity (by acceleration or otherwise), and at all times thereafter, of the Guaranteed Obligation, as follows:

**Definitions**. Each capitalized term used but not defined in this Guaranty shall have the meaning given that term in the Note. The following terms shall have the following meanings as used in this Guaranty:

*Borrower* has the meaning given in the first Recital above and includes, without limitation, all of Borrower's successors and assigns, Borrower as a debtor-in-possession, and any receiver, trustee, liquidator, conservator, custodian, or similar party hereafter appointed for Borrower or for all or any portion of Borrower's assets pursuant to any liquidation, conservatorship, bankruptcy, moratorium, rearrangement, receivership, insolvency, reorganization, or similar debtor relief law from time to time in effect.

*Guaranteed Obligation* means any and all existing and future indebtedness and liabilities of every kind, nature, and character, direct or indirect, absolute or contingent, liquidated or unliquidated, voluntary or involuntary, of Borrower to Lender arising under the Note, including any premium and all interest (including, without limitation, interest accruing before and after maturity, before and after a Default, and during the pendency of any bankruptcy, receivership insolvency or other similar proceeding under any applicable debtor relief law (regardless of whether such interest is allowed in such proceeding)), and any and all costs, attorney and paralegal fees and expenses reasonably incurred by Lender

(a) in connection with any waiver, amendment, consent or default under the Note, or (b) to enforce Borrower's, Guarantor's, or any other obligor's payment of any portion of the Guaranteed Obligation.

*Investor Debt* means all obligations of Borrower to any Guarantor, whether direct, indirect, fixed, contingent, liquidated, unliquidated, joint, several, or joint and several, now existing or arising after the date of this Guaranty, due or to become due to Guarantor, or held or to be held by Guarantor, whether created directly or acquired by assignment or otherwise, and whether or not evidenced by written instrument including the obligation of any Borrower to Guarantor as a subrogee of Lender or resulting from Guarantor's performance under this Guaranty.

*Paid in Full* or *Payment in Full* means that the Guaranteed Obligation is completely paid (including principal, interest, fees and expenses), and all commitments to lend have terminated.

Guaranty.   Guarantor hereby guarantees prompt payment and performance of the Guaranteed Obligation when due (at the stated maturity, upon acceleration, or otherwise) and at all times thereafter.  This is an absolute, unconditional irrevocable and continuing guaranty of payment (and not of collection) of the Guaranteed Obligation which will remain in effect until the Guaranteed Obligation is Paid in Full.  The circumstance that at any time or from time to time all or any portion of the principal amount of the Guaranteed Obligation may be reduced to zero shall not affect the Guarantor's obligation with respect to the Guaranteed Obligation thereafter incurred.  Guarantor may not rescind or revoke its obligations to Lender under this Guaranty with respect to the Guaranteed Obligation.  All payments under this Guaranty shall be made to the office of Lender and in United States dollars.

Default by Borrower.  If a Default by Borrower exists, Guarantor shall pay the amount of the Guaranteed Obligation then due and payable to Lender on demand and without (a) further notice of dishonor to Guarantor, (b) any prior notice to Guarantor of the acceptance by Lender of this Guaranty, (c) any notice having been given to Guarantor prior to such demand of the creating or incurring of such Debt, or (d) notice of intent to accelerate or notice of acceleration to Guarantor or Borrower.  To enforce such payment by any Guarantor it shall not be necessary for Lender to first or contemporaneously institute suit or exhaust remedies against any Borrower or others liable on such Debt, or to enforce rights against any security or collateral ever given to secure such Debt.

Amount of Guaranty and Consideration.  In consummating the transactions contemplated by the Note, Guarantor does not intend to disturb, delay, hinder, or defraud either its present or future creditors.  Guarantor is familiar with, and has independently reviewed books and records regarding, the financial condition of Borrower and is familiar with the value of the security and support for the payment and performance of the Guaranteed Obligation.  Based upon such examination, and taking into account the fairly discounted value of Guarantor's contingent obligations under this Guaranty and the value of the subrogation and contribution claims Guarantor could make in connection with this Guaranty, and assuming the transactions contemplated by the Note are consummated and Borrower makes full use of the credit thereunder, the present realizable fair market value of the assets of Guarantor exceeds the total

obligations of Guarantor, and Guarantor is able to realize upon its assets and pay its obligations as such obligations mature in the normal course of business. Guarantor represents and warrants to Lender that the value of consideration received and to be received by it is reasonably worth at least as much as its liability under this Guaranty, and such liability may reasonably be expected to benefit Guarantor, directly or indirectly.

Avoidance Limitation. The obligations of Guarantor under this Guaranty shall be limited to an aggregate amount equal to the largest amount that would not render its obligations under this Guaranty subject to avoidance under Section 548 of the U.S. Bankruptcy Code or any comparable provisions of any applicable state law.

Liability for Other Debt of Borrower. If any Guarantor becomes liable for any Debt owing by Borrower to Lender, by endorsement or otherwise, other than under this Guaranty, such liability shall not be impaired or affected by this Guaranty and the rights of Lender under this Guaranty shall be cumulative of any and all other rights that Lender may ever have against Guarantor.

Subordination. Guarantor hereby expressly subordinates all Investor Debt to the Payment in Full of the Guaranteed Obligation. Guarantor agrees not to receive or accept any payment from Borrower with respect to the Investor Debt at any time a Default by Borrower exists and, in the event Guarantor receives any payment on the Investor Debt in violation of the foregoing, Guarantor shall hold any such payment for the benefit of Lender and promptly turn it over to Lender, in the form received (with any necessary endorsements), to be applied to the Guaranteed Obligation. If Lender so requests, any such Investor Debt shall be enforced and all amounts received by Guarantor shall be received in trust for the Lender and the proceeds thereof shall be paid over to the Lender on account of the Guaranteed Obligation, but without reducing or affecting in any manner the liability of Guarantor under this Guaranty.

Subrogation. Until the Guaranteed Obligation is Paid In Full, Guarantor agrees that it will not assert, enforce, or otherwise exercise (i) any right of subrogation to any of the rights or liens of Lender or any other beneficiary against any Borrower or any other obligor on the Guaranteed Obligation, or (ii) any right of recourse, reimbursement, subrogation, contribution, indemnification, or similar right against any Borrower or any other obligor or other guarantor on all or any part of the Guaranteed Obligation (whether such rights in *clause (i)* or *clause (ii)*, or under *clause (b)* below, arise in equity, under contract, by statute, under common law, or otherwise).

Enforceability of Guaranty; No Release.

This Guaranty shall not be affected by the genuineness, validity, regularity or enforceability of the Guaranteed Obligation or any instrument or agreement evidencing any part of the Guaranteed Obligation, or by the existence, validity, enforceability, perfection, or extent of any collateral securing the Guaranteed Obligation, or by any fact or circumstance relating to the Guaranteed Obligation which might otherwise constitute a defense to the obligations of the Guarantor under this Guaranty.

Guarantor agrees that Lender may, at any time and from time to time, and without notice to Guarantor, make any agreement with any Borrower or with any other person liable on any of the Guaranteed Obligation, for the extension, renewal, payment, compromise, discharge or release of the Guaranteed Obligation, or for any modification or amendment of the terms thereof or of any instrument or agreement evidencing the Guaranteed Obligation, all without in any way impairing, releasing, discharging or otherwise affecting the obligations of Guarantor under this Guaranty.

Guarantor hereby agrees its obligations under the terms of this Guaranty shall not be released, discharged, diminished, impaired, reduced or otherwise adversely affected by any of the following: (i) Lender's taking or accepting of any other security or guaranty for any or all of the Guaranteed Obligation; (ii) any release, surrender, exchange, subordination or loss of any security at any time existing in connection with any or all of the Guaranteed Obligation; (iii) any full or partial release of the liability of any other obligor on the Guaranteed Obligation; (iv) the insolvency, becoming subject to any debtor relief law, or lack of corporate power of any Borrower or any party at any time liable for the payment of any or all of the Guaranteed Obligation; (v) any renewal, extension or rearrangement of the payment of any or all of the Obligation, either with or without notice to or consent of Guarantor, or any adjustment, indulgence, forbearance, or compromise that may be granted or given by Lender to Borrower, Guarantor, or any other obligor on the Obligation; (vi) any neglect, delay, omission, failure or refusal of Lender to take or prosecute any action for the collection of all or any part of the Guaranteed Obligation or to foreclose or take or prosecute any action in connection with any instrument or agreement evidencing or securing any or all of the Guaranteed Obligation; (vii) any failure of Lender to give Guarantor notice of any of the foregoing it being understood that Lender shall not be required to give Guarantor any notice of any kind under any circumstances with respect to or in connection with the Guaranteed Obligation, other than any notice expressly required to be given to Guarantor under this Guaranty; (viii) the unenforceability of all or any part of the Guaranteed Obligation against Borrower by reason of the fact that the Guaranteed Obligation (or the interest on the Guaranteed Obligation) exceeds the amount permitted by law, the act of creating the Guaranteed Obligation, or any part thereof, is *ultra vires*, or the officers creating same exceeded their authority or violated their fiduciary duties in connection therewith; (ix) any payment of the Obligation to Lender is held to constitute a preference under any debtor relief law or if for any other reason Lender is required to refund such payment or make payment to someone else (and in each such instance this Guaranty shall be reinstated in an amount equal to such payment); or (x) any discharge, release, or other forgiveness of any Borrower's personal liability for the payment of the Guaranteed Obligation.

<u>Exercise of Rights and Waiver.</u>

No failure by Lender to exercise, and no delay in exercising, any right or remedy under this Guaranty shall operate as a waiver thereof. The exercise by Lender of any right or remedy under this Guaranty under the Note, or other instrument, or at law or in equity, shall not preclude the concurrent or subsequent exercise of any other right or remedy. The remedies provided in this Guaranty are cumulative and not exclusive of any remedies provided by law or in equity. The unenforceability or invalidity of any provision of this Guaranty shall not affect the enforceability or validity of any other provision herein.

The obligations of Guarantor under this Guaranty are those of primary obligor, and not merely as surety, and are independent of the Guaranteed Obligation. Guarantor waives diligence by Lender and action on delinquency in respect of the Guaranteed Obligation or any part thereof, including any provisions of laws requiring Lender to exhaust any right or remedy or to take any action against any Borrower, any other Guarantor, or any other Person before enforcing this Guaranty against any Guarantor. Guarantor hereby waives all rights by which it might be entitled to require suit on an accrued right of action in respect of any of the Guaranteed Obligation or require suit against Borrower or others, whether arising pursuant to Section 34.02 of the Texas Business and Commerce Code, as amended (regarding Guarantor's right to require Lender to sue Borrower on accrued right of action following Guarantor's written notice to Lender), Section 17.001 of the Texas Civil Practice and Remedies Code, as amended (allowing suit against any Guarantor without suit against any Borrower, but precluding entry of judgment against any Guarantor prior to entry of judgment against any Borrower), Rule 31 of the Texas Rules of Civil Procedure, as amended (requiring Lender to join any Borrower in any suit against any Guarantor unless judgment has been previously entered against a Borrower), or otherwise.

Guarantor waives notice of acceptance of this Guaranty, notice of any loan to which it may apply, and waives presentment, demand for payment, protest, notice of dishonor or nonpayment of any loan, notice of intent to accelerate, notice of acceleration, and notice of any suit or notice of the taking of other action by Lender against Borrower, Guarantor or any other Person and any notice to any party liable thereon (including Guarantor), without reducing or affecting in any manner the liability of Guarantor under this Guaranty.

Information. Upon an uncured default by Borrower, Guarantor agrees to furnish promptly to Lender any and all financial or other information regarding Guarantor or its property as the Lender may reasonably request in writing.

Stay of Acceleration. In the event that acceleration of the time for payment of any of the Guaranteed Obligation is stayed, upon the insolvency, bankruptcy or reorganization of the Borrower or any other Person, or otherwise, all such amounts shall nonetheless be payable by Guarantor immediately upon demand by Lender.

Expenses. Guarantor shall pay on demand all out-of-pocket expenses (including reasonable attorneys' fees and expenses and the allocated cost and disbursements of internal legal counsel) in any way relating to the enforcement or protection of the Lender's rights under this Guaranty, including any incurred in the preservation, protection or enforcement of any rights of the Lender in any case commenced by or against Guarantor under Title 11, United States Code or any similar or successor statute. The obligations of the Guarantor under the preceding sentence shall survive termination of this Guaranty.

Amendments. No provision of this Guaranty may be waived, amended, supplemented or modified, except by a written instrument executed by Lender and Guarantor.

Reliance and Duty to Remain Informed. Guarantor confirms that it has executed and delivered this Guaranty after reviewing the terms and conditions of the Note and such other information as it has deemed appropriate in order to make its own credit analysis and decision to execute and deliver this Guaranty. Guarantor confirms that it has made its own independent

investigation with respect to Borrower's creditworthiness and is not executing and delivering this Guaranty in reliance on any representation or warranty by Lender as to such creditworthiness. Guarantor expressly assumes all responsibilities to remain informed of the financial condition of Borrower and any circumstances affecting (a) Borrower's ability to perform under the Note or (b) any collateral securing all or any part of the Guaranteed Obligation.

Change in Guarantor's Status. Should Guarantor die, become insolvent, or fail to pay its debts generally as they become due, or voluntarily seek, consent to, or acquiesce in the benefit or benefits of any debtor relief law or become a party to (or be made the subject of) any proceeding provided for by any debtor relief law (other than as a creditor or claimant) that could suspend or otherwise adversely affect the rights of Lender granted under this Guaranty, then, in any such event, the Guaranteed Obligation shall be, as between Guarantor and Lender, a fully matured, due, and payable obligation of any Guarantor to Lender (without regard to whether any Borrower is then in Default or whether the Guaranteed Obligation, or any part thereof is then due and owing by any Borrower to Lender), payable in full by Guarantor to Lender upon demand, which shall be the estimated amount owing in respect of the contingent claim created under this Guaranty.

Offset Claims. The Guaranteed Obligation shall not be reduced, discharged or released because or by reason of any existing or future offset, claim or defense (except for the defense of Payment in Full of the Guaranteed Obligation) of any Borrower or any other party against Lender or against payment of the Guaranteed Obligation, whether such offset, claim, or defense arises in connection with the Guaranteed Obligation or otherwise. Such claims and defenses include, without limitation, failure of consideration, breach of warranty, fraud, statute of frauds, bankruptcy, infancy, statute of limitations, lender liability, accord and satisfaction, and usury.

Binding Agreement. This Guaranty is for the benefit of Lender and its successors and assigns. Guarantor acknowledges that in the event of an assignment of the Guaranteed Obligation or any part thereof in accordance with the Note, the rights and benefits under this Guaranty, to the extent applicable to the debt so assigned, may be transferred with such debt. This Guaranty is binding on Guarantor and its successors and permitted assigns, *provided that* Guarantor may not assign its rights or obligations under this Guaranty without the prior written consent of Lender (and any attempted assignment without such consent shall be void).

Notices. All notices required or permitted to be given under this Guaranty, if any, must be in writing and shall or may, as the case may be, be given in the same manner as notice is given under the Note as follows:

If to Lender:

Bigham Investment Company
c/o Galow & Smith, P.C.
1204 Nueces Street
Austin, Texas 78701

If to Borrower:

> Enzo Investments, L.P.
> 4141 Southwest Freeway #300
> Houston, Texas 77027

*with a copy to:*

> Michael Neville, Esq.
> T. Michael Neville & Associates, P.C.
> 2040 North Loop West, Suite 102
> Houston, Texas 77018-8109

If to Guarantor:

> RR Homes, LLC
> 4141 Southwest Freeway #300
> Houston, Texas 77027

*with a copy to:*

> Michael Neville, Esq.
> T. Michael Neville & Associates, P.C.
> 2040 North Loop West, Suite 102
> Houston, Texas 77018-8109

Subject to the terms of the Note, by giving at least 30 days written notice, any party to this Guaranty shall have the right from time to time and at any time while this Guaranty is in effect to change its addresses or fax numbers and each shall have the right to specify a different address or fax number within the United States of America. Nothing in this *Section* shall be construed to require any notice to Guarantor not otherwise expressly required in this Guaranty.

Termination.  Subject only to the reinstatement provision below, this Guaranty shall terminate and be released on the date the Guaranteed Obligation is Paid In Full.

Reinstatement.  Notwithstanding anything in this Guaranty to the contrary, this Guaranty shall continue to be effective or be reinstated, as the case may be, if at any time any payment of any portion of the Guaranteed Obligations is revoked, terminated, rescinded or reduced or must otherwise be restored or returned upon the insolvency, bankruptcy or reorganization of any Borrower or any other Person or otherwise, as if such payment had not been made and without regard to whether Lender is in possession of or has released this Guaranty and regardless of any prior revocation, rescission, termination or reduction.  In the event that this Guaranty is deemed to be reinstated after it has been terminated and released by Lender, the termination and release shall be deemed not to have occurred, this Guaranty shall be reinstated and shall be in full force and effect as if it had never been terminated or released.  If this Guaranty has been returned to the Guarantor, the Guarantor shall promptly deliver this Guaranty to Lender or Lender may

provide Guarantor with a copy of this Guaranty and the Guarantor shall promptly execute and deliver a copy of this Guaranty to Lender.

Governing Law.  THIS GUARANTY IS TO BE CONSTRUED — AND ITS PERFORMANCE ENFORCED — UNDER TEXAS LAW.

Waiver of Jury Trial.  Guarantor and Lender irrevocably and voluntarily waive any right they may have to a trial by jury in respect of any claim.  This provision is a material inducement for the parties entering into this Guaranty.

No Oral Agreements.  THE RIGHTS AND OBLIGATIONS OF THE PARTIES HERETO SHALL BE DETERMINED SOLELY FROM WRITTEN AGREEMENTS, DOCUMENTS, AND INSTRUMENTS, AND ANY PRIOR ORAL AGREEMENTS BETWEEN THE PARTIES ARE SUPERSEDED BY AND MERGED INTO SUCH WRITINGS. THIS GUARANTY (AS AMENDED IN WRITING FROM TIME TO TIME) THE NOTE, AND ANY OTHER WRITTEN DOCUMENTS EXECUTED BY BORROWER, LENDER, OR GUARANTOR RELATED THERETO (OR BY BORROWER OR GUARANTOR FOR THE BENEFIT OF LENDER) REPRESENT THE FINAL AGREEMENT AMONG BORROWER, GUARANTOR, AND LENDER AND MAY NOT BE CONTRADICTED BY EVIDENCE OF PRIOR, CONTEMPORANEOUS, OR SUBSEQUENT ORAL AGREEMENTS BY THE PARTIES.  THERE ARE NO UNWRITTEN ORAL AGREEMENTS BETWEEN THE PARTIES.

[*Signature and acknowledgment are on the following page.*]

EXECUTED as of the date first written above.

GUARANTOR:

RR HOMES, LLC

_____

BY: THE VILLAS MANAGEMENT, LLC
NAME: OHAD YANNAY
TITLE: MANAGER

STATE OF TEXAS       §
                         §
COUNTY OF HARRIS   §

This instrument was acknowledged before me on _____, 2009 by Ohad Yannay, manager on behalf of The Villas Management, LLC, manager of RR Homes, LLC for the purpose and consideration therein stated.

_____

Notary Public in and for the State of Texas

# **Exhibit 7**
Enzo Authorization

_____, 2009

Rodney Tow
26219 Oak Ridge Drive
The Woodlands, TX 77380

     *Re:*    *Instructions – Insertion of Date of Promissory Note*

Dear Mr. Tow:

     Pursuant to the Order of the United States Bankruptcy Court for the Southern District of Texas entered on or about April 24, 2009, in *In re: Galveston Company, LLC*, Case No. 09-30169-H4-7, the undersigned authorize you to insert _____, 2009 as the date of that certain Promissory Note executed by Enzo in the original principal amount of $250,000.00, which Promissory Note is being held by you pursuant to the terms of the Escrow Agreement.

     Please do not hesitate to contact either of the undersigned should you have any questions.

                    Very truly yours,

                    Enzo Investments, L.P.

                    By: _____

                    Title: _____

# **Exhibit 8**
## Special Warranty Deed

## SPECIAL WARRANTY DEED

THE STATE OF TEXAS      §
                              §      KNOW ALL PERSONS BY THESE PRESENTS:

COUNTY OF HARRIS      §

         Pursuant to the Order of the United States Bankruptcy Court for the Southern District of Texas entered on or about April 24, 2009 (the "Order") in *In re: Galveston Company, LLC*, Case No. 09-30169-H4-7; in the United States Bankruptcy Court for the Southern District of Texas, Houston Division, a copy of which is attached hereto as **Exhibit "A"** and incorporated herein, The Galveston Company, LLC ("Grantor"), for Ten and No/100 Dollars ($10.00), and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged and confessed by Grantor, has GRANTED, SOLD and CONVEYED, and by these presents does GRANT, SELL and CONVEY, unto [_____] ("Grantee") all right, title and interest in and to that certain real property situated in Harris County, Texas and more particularly described on **Exhibit "B"** together with, all and singular, all other rights, benefits, privileges, hereditaments, appurtenances thereto (collectively referred to as the "Property").

         The Property is conveyed "AS IS, WHERE IS" AND WITHOUT WARRANTY OTHER THAN WARRANTY OF TITLE AS SET FORTH IN THE BANKRUPTCY COURT ORDER APPROVING THE SALE OF THE PROPERTY.

         To have and to hold the Property unto Grantee and Grantee's successors and assigns; and Grantor does hereby bind itself, its successors and assigns to warrant and forever defend, all and singular, the Property unto Grantee and Grantee's successors and assigns, against every person whosoever lawfully claims the same or any part thereof, by, through or under Grantor, but not otherwise.

         This conveyance is made subject to any and all valid and subsisting restrictions, easements, rights of way, reservations, maintenance charges, together with any lien securing said maintenance charges, zoning laws, ordinances of municipal and/or other governmental authorities, conditions and covenants, if any, applicable to and enforceable against the Property as shown by the records of the County Clerk of Harris County, Texas.

         Executed this _____ day of _____, 2009.

                               Grantor:

                               THE GALVESTON COMPANY, LLC

                               By:_____
                               Title:_____

THE STATE OF TEXAS                    §
                                      §
COUNTY OF HARRIS                      §

    This instrument was sworn to and subscribed before me on the _____ day of July, 2009, by Kenneth Noble Bigham, Sr. on behalf of The Galveston Company, LLC, known to me and who did state that he executed this instrument in the capacity set forth herein.

 

_____
**Notary Public in and for the State of Texas**

Exhibit A
Bankruptcy Court Order

Exhibit B
Legal Description of the Property



TRACT ONE: Being a 23.887 acre tract or parcel of land situated in the David
Harris League, Abstract No. 25, Harris County, Texas, being all that certain
tract of land called 3.949 acres described in General Warranty Deed dated May
16, 1995, from A. C. DuBose to VELSICOL CHEMICAL CORPORATION recorded under
Clerk's File No. R409246 of the Harris County Official Public Records of Real
Property, out of and a part of that certain tract called 22.00 acres described
in Deed dated January 27, 1967, from Retzloff Chemical Corporation of Texas, a
Texas corporation, to Velsicol Chemical Corporation, an Illinois corporation,
recorded under Clerk's File No. C443176 of the Harris County Official Public
Records of Real Property, and out of and a part of that certain tract of land
called 6.676 acres designated as Tract 1 and described in Deed dated April 3,
1967, from FRIENDSWOOD DEVELOPMENT COMPANY to VELSICOL CHEMICAL CORPORATION
recorded under Clerk's File No. C479024 of the Harris County Official Public
Records of Real Property, said 23.887 acre tract or parcel of land herein
described being shown on a plat of even date and is more particularly described
by metes and bounds as follows:

BEARINGS ARE REFERENCED TO THE US STATE PLANE COORDINATE SYSTEM, TEXAS SOUTH
CENTRAL ZONE 4204, NORTH AMERICAN DATUM 1983. ALL COORDINATES ARE SURFACE
COORDINATES AND ALL DISTANCES ARE SURFACE DISTANCES.

BEGINNING at a Copperweld rod stamped 2089 found at the Southwesterly most
corner of the said Velsicol Chemical Corporation tract called 22.00 acres and
the Southwesterly most corner of the herein described tract, said rod being
situated in the Northerly most right-of-way line of Bay Area Boulevard (174
feet wide) at its intersection with the Easterly most right-of-way line of
Bayport Boulevard (150 feet wide) and has a Texas State Plane Coordinate
System, South Central Zone 4204 value of X=3,322,026.49 and Y=13,791,548.45;

THENCE North 27 deg. 33 min. 23 sec. West, along the Easterly most right-of-way
line of Bayport Boulevard, the Westerly most line of the said Velsicol Chemical
Corporation tract called 22.00 acres and the Westerly most line of the said
Velsicol Chemical Corporation tract called 3.949 acres, a distance of 991.11
feet to a 5/8" iron rod set with cap for the Northwesterly most corner of the
said Velsicol Chemical Corporation tract called 3.949 acres and the
Northwesterly most corner of the herein described tract;

THENCE North 62 deg. 27 min. 27 sec. East, along the Southerly most line of a
Southern Pacific Transportation Company right-of-way (50 feet wide) described
in Deed dated April 12, 1973, from FRIENDSWOOD DEVELOPMENT COMPANY to SOUTHERN
PACIFIC TRANSPORTATION COMPANY recorded under Clerk's File No. D867930 of the
Harris County Official Public Records of Real Property, and along the Northerly
most line of the said Velsicol Chemical Corporation tract called 3.949 acres, a
distance of 1433.81 feet to a 5/8" iron rod set for the Northeasterly most
corner of the said Velsicol Chemical Corporation tract called 3.979 acres and
the Northeasterly most corner of the herein described tract said iron rod being
situated in the Westerly most right-of-way line of Chemical Road (100 feet
wide);

THENCE South 27 deg. 32 min. 22 sec. East, along the Westerly most right-of-way
line of Chemical Road and the Easterly most line of the said Velsicol Chemical
Corporation tract called 3.979 acres, passing at 120.00 feet the Southeasterly
most corner of the said Velsicol Chemical Corporation tract called 3.979 acres,

Continued on next page

CONTINUATION OF EXHIBIT "A"
GF NO.: 08109603

CONTINUATION OF THE EXHIBIT:
same being the Northeasterly most corner of the said Velsicol Chemical
Corporation tract called 6.676 acres, and continuing along the Westerly most
right-of-way line of Chemical Road and the Easterly most line of the said
Velsicol Chemical Corporation tract called 6.676 acres, a total distance of
255.07 feet to a point marking the Northeasterly most corner of that certain
tract of land called 8.7350 acres described in a Special Warranty Deed dated
October 16, 1991, from VELSICOL CHEMICAL CORPORATION to DIXIE CHEMICAL COMPANY,
INC. recorded under Clerk's File No. N392508 of the Harris County Official
Public Records of Real Property, said point being a corner of the herein
described tract from which a found 5/8" iron rod bears South 61 deg. West, a
distance of 0.13 feet;

THENCE South 62 deg. 26 min. 30 sec. West, over and across the said Velsicol
Chemical Corporation tract called 6.676 acres, over and across a portion of the
said Velsicol Chemical Corporation tract called 22.00 acres and with the
Northerly most line of the said Dixie Chemical Company, Inc. tract called
8.7350 acres, a distance of 518.85 feet to a steel fence corner post found in
concrete for the Northwesterly most corner of the said Dixie Chemical Company,
Inc. tract called 8.7350 acres and an interior corner of the herein described
tract;

THENCE South 27 deg. 50 min. 06 sec. East, continuing over and across a portion
of the said Velsicol Chemical Corporation tract called 22.00 acres and with the
Westerly most line of the said Dixie Chemical Company, Inc. tract called 8.7350
acres, a distance of 735.76 feet to a 5/8" iron rod found in the Northerly most
right-of-way line of Bay Area Boulevard for the Southwesterly most corner of
the said Dixie Chemical Company, Inc. tract called 8.7350 acres and the
Southerly most Southeast corner of the herein described tract;

THENCE South 62 deg. 27 min. 27 sec. West, along the Northerly most
right-of-way line of Bay Area Boulevard and the Southerly most line of the said
Velsicol Chemical Corporation tract called 22.00 acres, a distance of 918.47
feet to the POINT OF BEGINNING, containing 1,040,504.1 square feet or 23.887
acres of land.

TRACT TWO: Being a 20.701 acre tract or parcel of land situated in the David
Harris League, Abstract No. 25, Harris County, Texas, being all that certain
tract of land called 1.579 acres described in Deed dated July 7, 1967, from
FRIENDSWOOD DEVELOPMENT COMPANY to VELSICOL CHEMICAL CORPORATION recorded under
Clerk's File No. C545934 of the Harris County Official Public Records of Real
Property, and out of and a part of that certain tract of land called 43.732
acres designated as Tract 2 and described in Deed dated April 3, 1967, from
FRIENDSWOOD DEVELOPMENT COMPANY to VELSICOL CHEMICAL CORPORATION recorded under
Clerk's File No. C479024 of the Harris County Official Public Records of Real
Property, said 20.701 acre tract or parcel of land herein described being shown
on a plat of even date and is more particularly described by metes and bounds
as follows:

BEARINGS ARE REFERENCED TO THE US STATE PLANE COORDINATE SYSTEM, TEXAS SOUTH
CENTRAL ZONE 4204, NORTH AMERICAN DATUM 1983. ALL COORDINATES ARE SURFACE
COORDINATES AND ALL DISTANCES ARE SURFACE DISTANCES.

COMMENCING at a Copperweld rod stamped 2089 found in the Northerly most right-
Continued on next page

CONTINUATION OF EXHIBIT "A"
GF NO.: 08109603

of-way line of Bay Area Boulevard (174 feet wide) at its intersection with the Easterly most right-of-way line of Bayport Boulevard (150 feet wide), said rod has a Texas State Plane Coordinate System, South Central Zone 4204 value of X=3,222,026.45 and Y=13,791,545.45;

THENCE North 27 deg. 33 min. 23 sec. West, along the Easterly most right-of-way line of Bayport Boulevard, a distance of 1,041.11 feet to a 5/8" iron rod set with cap for the Southwesterly most corner of the said Velsicol Chemical Corporation tract called 1.979 acres and the Southwesterly most corner of the herein described tract and POINT OF BEGINNING from which a found 5/8" iron rod bears North 77 deg. East, a distance of 0.48 feet, said set iron rod being situated in the Northerly most right-of-way line of a Southern Pacific Transportation Company right-of-way (50 feet wide) described in Deed dated April 12, 1973, from FRIENDSWOOD DEVELOPMENT COMPANY to SOUTHERN PACIFIC TRANSPORTATION COMPANY recorded under Clerk's File No. D867930 of the Harris County Official Public Records of Real Property;

THENCE North 27 deg. 33 min. 23 sec. West , continuing along the Easterly most right-of-way line of Bayport Boulevard, passing at 60.00 feet a 5/8" iron rod found at the Northwesterly most corner of the said Velsicol Chemical Corporation tract called 1.979 Acres, said iron rod being also the Southwesterly most corner of the said Velsicol Chemical Corporation tract called 43.722 acres, and continuing along the Easterly most line of Bayport Boulevard and the Westerly most line of the said Velsicol Chemical Corporation tract called 43.722 acres, for a total distance of 781.51 feet to a 5/8" iron rod found for the Southwesterly most corner of that certain tract of land called 10.00 acres described in a Special Warranty Deed dated December 26, 1991, from VELSICOL CHEMICAL CORPORATION to DIANAL AMERICA, INC. recorded under File Clerk's No. N471595 of the Official Public Recordsof Real Property, said iron rod being also the Northwesterly most corner of the herein described tract;

THENCE North 62 deg. 27 min. 00 sec. East with the Southerly most line of the said Dianal America, Inc. tract called 10.00 acres and over and across a portion of the Velsicol Chemical Corporation tract called 43.722 acres, a distance of 716.71 feet to a 1/2" iron rod found for the Southeasterly most corner of the said Dianal America, Inc. tract called 10.00 acres and a corner of the herein described tract, said iron rod being situated at the Westerly most line of that certain tract of land called 15.0006 acres described in a Special warranty Deed dated May 28, 1992, from VELSICOL CHEMICAL CORPORATION to HOYER USA, INC. recorded under Clerk's File No. N693498 of the Harris County Official Public Records of Real Property;

THENCE South 27 deg. 27 min. 38 sec. East, with the Westerly most line of the said Hoyer USA, Inc. tract called 15.0000 acres and continuing over and across a portion of the said Velsicol Chemical Corporation tract called 43.722 acres, a distance of 305.40 feet to a 1/2" iron rod found for the Southwesterly most corner of the said Hoyer USA, Inc. tract called 15.0000 acres and an interior corner of the herein described tract;

THENCE North 62 deg. 25 min. 45 sec. East, with the Southerly most line of the said Hoyer USA, Inc. tract called 15.0000 acres and continuing over and across a portion of the said Velsicol Chemical Corporation tract called 43.722 acres, a distance of 717.77 feet to a 5/8" iron rod found in the Westerly most right-of-way line of Chemical Road (100 feet wide) for the Southeasterly most

Continued on next page

CONTINUATION OF EXHIBIT "A"
GF NO.: 08109603

corner of the said Hoyer USA, Inc. tract called 15.0000 acres, said iron rod being the Easterly most Northeast corner of the herein described tract;

THENCE South 27 deg. 32 min. 22 sec. East, along the Westerly most right-of-way line of Chemical Road and the Easterly most line of the said Velsicol Chemical Corporation tract called 43.722 acres, passing at 416.55 feet a Copperweld rod stamped 3184 marking the Southeasterly most corner of the said Velsicol Chemical Corporation tract called 43.722 acres, same being the Northeasterly most corner of the said Velsicol Chemical Corporation tract called 1.979 acres, and continuing along the Westerly most right-of-way line of Chemical Road and the Easterly most line of the said Velsicol Chemical Corporation tract called 1.979 acres, a total distance of 476.55 feet to a 5/8" iron rod found for the Southeasterly most corner of the said Velsicol Chemical Corporation tract called 1.979 acres and the Southeasterly most corner of the herein described tract, said iron rod being situated in the Northerly most line of the said Southern Pacific Transportation Company right-of-way (50 feet wide);

THENCE South 62 deg. 27 min. 27 sec. West, along the Southerly most line of the said Velsicol Chemical Corporation tract called 1.979 acres and along the Northerly most line of the said Southern Pacific Transportation Company right-of-way (50 feet wide), a distance of 1433.83 feet to the POINT OF BEGINNING, containing 901,721.5 square feet or 20.701 acres of land.

TRACT THREE: That certain non-exclusive easement and right of way to construct, maintain, repair, operate, replace, change, and remove one pipeline as set out in instrument recorded under Harris County Clerk's File Number S275446.

# **Exhibit 9**
## Galco Instruction Letter

_____, 2009

Rodney Tow
26219 Oak Ridge Drive
The Woodlands, TX 77380

      *Re:    Instructions – Insertion of Name of Grantee in Special Warranty Deed*

Dear Mr. Tow:

      Pursuant to the Order of the United States Bankruptcy Court for the Southern District of Texas entered on or about April 28, 2009, in *In re: Galveston Company, LLC*, Case No. 09-30169-H4-7, the undersigned authorizes you to insert the name "_____" as the name of the "Grantee" in that certain Special Warranty Deed executed by Galco as "Grantor" on _____, 2009, which Special Warranty Deed is being held by you pursuant to the terms of the Mediated Settlement Term Sheet.

      Please do not hesitate to contact either of the undersigned should you have any questions.

                Very truly yours,

                Galveston Company, LLC

                By: _____

                Title: _____

# **Exhibit 10**
IP Withdrawal from Involuntary Petition

## UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| THE GALVESTON COMPANY, LLC | § | Case Number: 09-30169-H4-7 |
| | § | (Involuntary) |
| Alleged Debtor | § | |

## IP INVESTMENT, LLC'S NOTICE OF
## <u>WITHDRAWAL AS PETITIONING CREDITOR</u>

Pursuant to the Order Approving (i) Settlement under Bankruptcy Rule 9019; and (ii) Sale of Property Free and Clear of all Liens, Claims, Interests and Encumbrances Pursuant to 11 U.S.C. § 363(F) (Docket No. ____, the "9019 Order") signed by the Court on April 24, 2009, IP Investments, LLC ("IP"), hereby withdrawals its signature from the Involuntary Petition under Chapter 7 (Docket No. 1) filed against the alleged debtor, The Galveston Company, LLC.

DATED this ____ day of _____ 2009.

**IP INVESTMENTS, LLC**

By:_____
Name: _____
Title:_____